A06A2197. SOUTHWAY INDUSTRIAL SERVICES, INC. v. BOYD et al.
(642 SE2d 889)

MIKELL, Judge.

Gary Boyd was injured when some large steel plates fell on him while he was working on a construction site. Boyd sued Southway Industrial Services, Inc. ("Southway"),[1] alleging that the negligence

---

[1] Also named as a defendant was Packaging Corporation of America ("PCA"). PCA operated

of its crane operator caused his injuries. Southway moved for summary judgment, asserting that it could not be held liable because the crane operator was a "borrowed servant" of the general contractor, Entech Corporation ("Entech"), at the time of the accident. The trial court denied Southway's motion for summary judgment and issued a certificate of immediate review. We granted Southway's application for interlocutory appeal.

Summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[2] We apply a de novo standard of review to an appeal of a denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmoving party.[3] Further, in moving for summary judgment,

> a party who will not bear the burden of proof at trial need not conclusively prove the opposite of each element of the non-moving party's case. Rather, that party must demonstrate by reference to evidence in the record that there is an absence of evidence to support at least one essential element of the non-moving party's case.[4]

Because we conclude that, under the contract in force between Southway and Entech, the crane operator was a "borrowed servant" of Entech as a matter of law, we reverse the ruling of the trial court.

Properly viewed, the record shows that, on December 17, 2000, Entech, as the general contractor, leased a crane from Southway, a company in the business of leasing cranes, for a job at PCA's plant involving moving large steel plates. The agreement provided, in pertinent part, that:

> Lessee [Entech] agrees that the equipment (which includes, but is not limited to, any crane, lifting lug or device, chocker or shackle, and any other rigging equipment provided on the crane, equipment or otherwise, hereinafter referred to collectively as "the equipment") and all persons operating the equipment, including Lessor's [Southway's] employees (hereinafter collectively referred to as the "Operator") are under

---

the plant where Boyd's injury occurred. The trial court granted PCA's motion for summary judgment, and PCA is not a party to this appeal.

[2] OCGA § 9-11-56 (c); *Ga. Dept. of Transp. v. Thompson*, 270 Ga. App. 265 (606 SE2d 323) (2004).

[3] See *Ga. Dept. of Transp.*, supra at 265-266.

[4] (Citation and punctuation omitted.) *Kappa Sigma Intl. Fraternity v. Tootle*, 221 Ga. App. 890, 891 (473 SE2d 213) (1996).

Lessee's exclusive jurisdiction, supervision and control. Lessee acknowledges that at all times while the Operator is on the job site that Lessee has the right to exercise complete direction and control over the Operator, that Lessor will exercise no control over the Operator and that Lessee has the exclusive right to discharge the Operator from the work he is doing, that Lessee may require Lessor to replace the operator with another of Lessor's employees and that Lessee may put the crane operator to other work.

(Emphasis omitted.) This contract was executed on behalf of Entech by its construction manager at the PCA site, Alan Hall. Pursuant to this agreement, Southway provided a crane and a crane operator, Timothy Rogers, who had worked for Southway for seven years. On December 17, 2000, Rogers was the only person from Southway at the construction site. That morning, he began using the crane to lift large rectangular steel plates, approximately ten feet wide and twenty to twenty-four feet high, into position. Due to windy weather conditions, Rogers exited the cab of the crane and consulted with Hall and other Entech employees about the wind conditions preventing further use of the crane at that time. While these workers were consulting together, a strong gust of wind blew some plates over onto Boyd, injuring him.

Boyd subsequently filed suit against Southway, asserting that it was liable for Rogers's negligence under the theory of respondeat superior. Southway moved for summary judgment, arguing before the lower court, as it does on this appeal, that Rogers was a "borrowed servant" of Entech, and thus that Southway did not have vicarious liability for Rogers's negligence.

"One widely recognized exception to the doctrine of respondeat superior is the 'borrowed servant' rule. If a master lends his servants to another then the master is not responsible for any negligence of the servant committed within the scope of his employment by the other."[5] Further, it is well settled in this state that, in order to show that a particular employee is a "borrowed servant," "the evidence must show that (1) the special master had complete control and direction of the servant for the occasion; (2) the general master had no such control; and (3) the special master had the exclusive right to discharge the servant."[6]

---

[5] (Citation and punctuation omitted.) *Staffing Resources v. Nash*, 218 Ga. App. 525-526 (462 SE2d 401) (1995).

[6] (Citation and punctuation omitted.) *Six Flags Over Ga. v. Hill*, 247 Ga. 375, 377 (1) (276 SE2d 572) (1981); accord *Tim's Crane & Rigging v. Gibson*, 278 Ga. 796, 797 (604 SE2d 763) (2004).

Applying these tests, we see that the contract between Entech, as Lessee, and Southway, as Lessor, sets forth all three elements of the test for the "borrowed servant" doctrine. First, Entech agreed that the Southway crane and its operator "are under Lessee's exclusive jurisdiction, supervision and control. Lessee acknowledges that at all times while the Operator [that is, the Southway operator] is on the job site that Lessee has the right to exercise complete direction and control over the Operator." Thus, Entech had "complete control and direction of the servant for the occasion," as required by the first prong of the test. Second, the contract provides that "Lessor will exercise no control over the Operator." The record shows that there were no other employees of Southway besides Rogers at the job site at the time of the accident. Thus, the second part of the test, "the general master had no such control," is met. Third, the contract provides that "Lessee has the exclusive right to discharge the Operator from the work he is doing, that Lessee may require Lessor to replace the operator with another of Lessor's employees and that Lessee may put the crane operator to other work." Hall, Entech's construction foreman, testified in his deposition that he could have discharged Rogers if he felt that Rogers was not doing a good job. Thus, the third element, "the special master has the exclusive right to discharge the servant," is met.

In *Tim's Crane & Rigging v. Gibson*,[7] the Supreme Court ruled that where the contract between the two employers explicitly sets forth each requirement of the borrowed servant doctrine, "the contract between the parties is controlling as to their responsibilities thereunder."[8] Under the contract between Entech and Southway, "[w]hether or not [Entech] ever assumed any control or supervision of [Rogers], it acquired the right to do so and accepted the status of an employer. Because of this, any negligence of [Rogers] would not change the situation, as such negligence under the circumstances would be chargeable to [Entech] rather than to [Southway]."[9]

*Judgment reversed. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 2, 2007.

*Lowendick, Cuzdey, Ehrmann, Wagner & Stine, Nicholas M. Hollander, Drew, Eckl & Farnham, Lisa S. Higgins, Bruce A. Taylor, Jr.*, for appellant.

---

[7] Supra.

[8] (Citation and punctuation omitted.) Id. at 798.

[9] (Punctuation omitted.) Id., citing *Bowman v. Fuller*, 84 Ga. App. 421, 429 (3) (66 SE2d 249) (1951).

*Slappey & Sadd, James N. Sadd, Carlock, Copeland, Semler & Stair, Christopher A. Whitlock, Jacqueline M. Piland, James G. Tunison, Jr.,* for appellees.